# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5059 | **DATE** | 1/23/2004 |
| **CASE TITLE** | Eric Quinn, et al vs. Ameriquest Mortgage, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motions to dismiss (16-1, 20-1 & 24-1) with regard to Counts I and III are granted. We also grant Ameriquest's motion to strike paragraphs 15-18, 24-34, and 35 of the complaint. Because we dismiss the portions of the plaintiffs' complaint which purport to state a claim on behalf of a class, plaintiff' motion for class certification (18-1) is also denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JAN 2 6 2004 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 134 |
| | Mail AO 450 form. | *deputy initials* | |
| | Copy to judge/magistrate judge. | 1/23/2004 | |
| | | date mailed notice | |
| GL | courtroom deputy's initials | GL | |
| | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
'04 JAN 23 PM 10:25
Date/time received in Central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC QUINN and<br>MARIA SOTELO, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 03-CV-5059<br>) |
| AMERIQUEST MORTGAGE COMPANY;<br>ESTATE TITLE GROUP, L.L.C.;<br>PRIME INVESTMENT MORTGAGE<br>CORPORATION;<br>LAURA C. DANTUMA;<br>and DOES 1-10, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

DOCKETED
JAN 26 2004

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiffs Eric Quinn and Maria Sotelo filed a three-count complaint against defendants Ameriquest Mortgage Company, Estate Title Group, L.L.C., Prime Investment Mortgage Corporation, Laura C. Dantuma, and Does 1-10 (collectively "defendants").[1] The complaint charges violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2 ("ICFA"). The defendants filed three separate motions to dismiss.[2] For the following reasons, we grant all three of the motions and order the dismissal of Counts I and III of the plaintiffs'

---

[1]Does 1-10 are "persons or entities, unknown to plaintiffs, who have or claim an interest in plaintiffs' loan." (Compl. ¶ 10.)

[2]Ameriquest filed a motion requesting that we dismiss Counts I and III and that we strike paragraphs 15-18, 24-34 and 35 of the complaint. Prime and Dantuma filed a joint motion requesting dismissal of Count III. ETG also filed a separate motion requesting that we dismiss Count III. None of the defendants have requested dismissal of Count II, so we do not consider the legal sufficiency of that claim in the present opinion.

complaint.[3] Because we dismiss the portions of the plaintiffs' complaint which purport to state a claim on behalf of a class, plaintiffs' motion for class certification, filed on August 15, 2003, is also denied.

## BACKGROUND

For the purpose of a motion to dismiss, we accept all well-pled allegations as true. *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). We therefore recite the facts as the plaintiffs present them in their complaint.

In December 2002, Plaintiff Eric Quinn obtained a $128,700 mortgage loan from Defendant Ameriquest Mortgage Company ("Ameriquest") that he used for "personal, family or household purposes." (Compl. ¶¶ 11-12.) Quinn used Defendant Prime Investment Mortgage Corporation ("Prime Investment") as his mortgage broker. (Compl. ¶ 18.) He was assessed a finance charge of $211,962.12 in relation to his loan. He also purchased title insurance from Defendant Estate Title Group ("ETG") at a price of $890. (Compl. ¶ 16.) Quinn alleges that the $890 charged by ETG for the title insurance was substantially greater than the $539.44 quoted by Chicago Title, "a much larger and more substantial company" for similar coverage. (Compl. ¶ 17.)

Plaintiff Maria Sotelo's claims are similar to those of Quinn. Specifically, she claims that around December 2002, she contacted Prime Investment to obtain money to pay for home improvements. (Compl. ¶¶ 19-20.) Prime Investment arranged financing through Ameriquest in the amount of $112,786.68 and was assessed a finance charge of $215,090.82. (Compl. ¶ 23.) Like Quinn, Sotelo paid $890 for title insurance that she purchased from ETG. Sotelo claims that the amount that she paid to

---

[3]This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is an action brought under the laws of the United States (specifically, the TILA). The parties do not dispute that this court also has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

ETG for title insurance was "nearly twice the basic amount" of $527.80 quoted by Chicago Title for similar coverage. (Compl. ¶ 26.)

In their complaint, Quinn and Sotelo allege that ETG is an entity under common ownership[4] with the mortgage broker, Prime Investment and that Prime Investment engaged in the practice of obtaining title insurance from ETG. (Compl. ¶¶ 18, 32.) The plaintiffs further claim that the defendants intentionally colluded to overcharge their customers (including the plaintiffs) on title insurance. The purpose of this scheme was to impose upon the plaintiffs a hidden finance charge without having to disclose the amount of the finance charge to consumers under the TILA.

In Count I, brought by Quinn on behalf of a class against Ameriquest, plaintiffs claim that the practice of artificially deflating the finance charges by concealing part of those charges in the cost of title insurance violated the TILA's requirement that lenders disclose the exact amount of finance charges imposed on a loan. 15 U.S.C. § 1637. Quinn requests, *inter alia*, a declaration on behalf of the class that class members may rescind their transactions with Ameriquest. (Compl. ¶ 47.) In Count II, brought individually by Quinn and Sotelo against Ameriquest, the defendants claim that they have a right to rescind their loan agreements with Ameriquest. In Count III, brought by Quinn and Sotelo on behalf of a class against all of the defendants, the plaintiffs claim that the practice of overcharging for title insurance violated § 2 of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2.

## ANALYSIS

We are presented here with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)

---

[4] Quin and Sotello allege that Defendant Laura C. Dantuma is the principal officer and owner of both Prime Insurance and ETG. (Compl. ¶ 9.)

3

(quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *See id.* at 1520-21; *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir. 1998), *cert. denied* 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

As noted above, plaintiffs have raised two claims under the Truth in Lending Act and one claim under the Illinois Consumer Fraud Act. Compliance with the TILA is a complete defense under Illinois law to any claim brought under the ICFA. *Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462, 467-68 (Ill. 2001). Thus, the threshold question that we must consider in assessing all of the motions to dismiss is whether the plaintiffs have stated a cause of action under the TILA.

Congress enacted the TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see also Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363-68 (1973) (discussing the purpose and history of the TILA). Congress was particularly concerned about the practice engaged in by many lenders of advertising low credit rates to attract customers but then burying the cost of those lower credit rates by increasing the price of goods sold. *Mourning*, 411 U.S. at 365. Here, plaintiffs claim that the defendants did just that by advertising low credit rates but then later recouped the cost of those rates by charging more for title insurance.

To preclude lenders from engaging in the type of scheme alleged by the plaintiffs, the TILA mandates strict disclosure requirements with regard to finance charges. Specifically, before a creditor may enter a transaction with a consumer, he must disclose to the consumer the method by which the creditor determines the principal balance on the loan, the amount of the finance charge imposed on the loan, the applicable financing rates, and any other charges which may be imposed in addition to the finance charge. 15 U.S.C. § 1637. The question thus becomes whether the defendants have violated the TILA by failing to disclose finance charges, as they are required to do under § 1637. In order to answer this question, we must first consider what constitutes a finance charge for purposes of the TILA.

The Federal Reserve Board, charged by Congress with implementing the TILA, defined the term "finance charge" as the "cost of consumer credit as a dollar amount." 12 C.F.R. § 226.4(a) (2002) (hereinafter "Regulation Z"). Regulation Z includes a list of charges that are specifically excluded from the definition of "finance charge." 12 C.F.R. § 226.4(c). Among those fees excluded are any fees for title insurance, as long as those fees are "bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7)(i). Plaintiffs claim that the title insurance that they purchased from ETG does not fall under the title insurance exception because it was not "bona fide and reasonable in amount." Plaintiffs thus argue that the defendants should have disclosed the amount charged for title insurance as a finance charge.

A plaintiff may bring a cause of action under the TILA to rescind a loan contract where a lender has failed to fully disclose or has otherwise hidden finance charges from a borrower. 15 U.S.C. § 1640. To stem the tide of litigants bringing such claims where the hidden finance charges are *de minimus*, however, Congress amended the TILA in 1995 to provide that lenders would not be liable under the Act as long as their disclosed finance charges were within a certain permissible range of tolerance for accuracy. *See Smith v. Highland Bank*, 108 F.3d 1325, 1327 n.4 (11th Cir. 1997) (discussing the

5

legislative history and purpose behind the 1995 amendments to the TILA). Specifically, in 15 U.S.C. § 1605(f), Congress stated that finance charges "shall be treated as being accurate for purposes of [the TILA's rescission provision]" as long as "the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended." *See also* 12 C.F.R. § 226.23(g) (allowing a tolerance of one half of one percent).

Thus, the issue of whether plaintiffs have stated a claim for relief under the TILA (and, by extension, under the ICFA) for failure to include the overcharge on insurance in its finance rate boils down to a simple mathematical calculation. We must determine whether the amount allegedly overcharged for insurance by the defendants was greater or less than 0.5% of the total amount borrowed by the plaintiffs. The total amount borrowed by Quinn was $128,700. One half of one percent of that amount is $643.50. The amount charged for title insurance was $890. Quinn claims that a reasonable price for title insurance would have been $539.44.[5] The amount overcharged is thus $890 minus $539.44, or $350.56. Because $350.56 is less than 0.5% of the amount borrowed by Quinn (or $539.44), he may not state a claim for relief under the TILA.

The same calculation presents similar results for Sotelo. Sotelo borrowed $112,786.68. One half of one percent of that amount is $563.93. The amount charged for title insurance was $890. Sotelo

---

[5]The plaintiffs attempt, in their responses to the various motions to dismiss, to argue that the reasonable price for insurance would actually be much lower than that stated in their complaint. Although this may be the case, we cannot consider new facts raised in a response to a motion to dismiss. *In re Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992) (reiterating the rule that a district court is confined to the pleadings when considering a motion to dismiss). It was the plaintiffs who chose to allege what they thought a reasonable price would have been for title insurance and they must now live with that allegation or amend their complaint.

Plaintiffs also allege that this is a fact question that should not be addressed in a motion to dismiss. Although the ultimate determination of what constitutes a reasonable price for title insurance is a question of fact, the plaintiffs must at least *allege* in their complaint that they have met the statutory minimum for stating a claim under the TILA in order to survive a motion to dismiss.

6

claims that a reasonable price for title insurance would have been $527.80. The difference between the amount charged and the amount that would have been reasonable is thus $362.20, much less than 0.5% of the total amount borrowed by Sotelo (or $563.93). Thus, Sotelo also may not state a claim for relief under the TILA.

The plaintiffs believe that we should conduct our calculations differently. Specifically, they argue that, in determining the difference between the amount disclosed by the defendants as the finance charge and the actual finance charge, we should compare the entire $890 paid by the defendants for title insurance with 0.5% of the total amount borrowed rather than first subtracting from the $890 the amount that plaintiffs allege that a reasonable title insurance company would charge. We cannot agree with the plaintiffs' contention as a matter of common sense. Plaintiffs claim that the defendants folded a hidden finance charge into cost of their title insurance. They do not contend that the *entire* cost of the title insurance constituted a finance charge. Thus, we must discern how much of the total cost of the title insurance was made up of a finance charge. In order to do so, we must subtract from the amount charged a reasonable rate for title insurance. To do otherwise would be to penalize the defendants for the portion of the entire title insurance cost that actually went to providing the plaintiffs with title insurance.

Although only two other cases have dealt with this question,[6] the courts in both of those cases have reached the same conclusion. *See Guise v. BWM Mortgage, L.L.C.*, No. 03-C-4123, 2003 WL 22019346 (N.D. Ill. Aug. 26, 2003); *Walker v. Gateway Financial Corp.*, No. 03-C-4263, 2003 WL 22318843 (N.D. Ill. Oct. 7, 2003). Moreover, the plain language of § 1605(f) suggests that the plaintiffs' proposed formula is untenable. As stated above, the tolerance for accuracy provision provides that a

---

[6]Interestingly, aside from these two cases, no federal court, either inside or outside of the Northern District of Illinois has considered the question of how to calculate the TILA's 0.5% tolerance for accuracy. Perhaps this is because the plaintiffs in *Guise*, *Walker*, and the present case have all been represented by the same counsel.

creditor will not be liable for a violation of the TILA where "the amount disclosed as the finance charge *does not vary from* the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended." 15 U.S.C. § 1605(f) (emphasis added). The phrase "does not vary from" instructs us to look at the difference between what was actually disclosed as the finance charge and what the finance charge would have been if the defendants had not overcharged for insurance. The result of this calculation would simply be inaccurate if plaintiffs were allowed to insert the entire amount charged for insurance rather than the amount that the plaintiffs claim was unreasonable. Thus, we cannot find that the plaintiffs have stated a cause of action under the TILA.[7]

## CONCLUSION

For the foregoing reasons, we grant the defendants' motions to dismiss with regard to Counts I and III. We also grant Ameriquest's motion to strike paragraphs 15-18, 24-34 and 35 of the complaint. Because we dismiss the portions of the plaintiffs' complaint which purport to state a claim on behalf of a class, plaintiffs' motion for class certification is also denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 1/23/04

---

[7]Plaintiffs also provide a complex statutory construction argument in support of their position. The statutory construction argument is based on a detailed look at the difference in meaning of the word "if" as compared with the meaning of the phrase "to the extent that" as used throughout the TILA. Although statutory construction may be a useful tool for untangling Congressional intent where that intent is ambiguous, it is not relevant in cases, such as the present action, where the statutory language is clear. Judge Shadur, when presented with the identical statutory argument, provided a particularly astute response: "Plaintiffs' counsel try to extricate themselves from the vise of [an] extraordinarily clear conclusion by seeking to obscure the path of logic with a good deal of verbal underbrush. But not much of an analytical machete is needed to hack through that underbrush to recognize that this is precisely the kind of situation for which Congress enacted" the tolerance for accuracy provisions of the TILA. *Walker*, 2003 WL at *2.